IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Darrell Fair, <br><br> Plaintiff, <br><br> v. <br><br> Randy Pfister, et al., <br><br> Defendants. | Case No. 21 CV 00319 <br><br> Honorable Nancy L. Maldonado |

**Memorandum Opinion and Order**

  Plaintiff Darrell Fair brings this action against the Illinois Department of Corrections ("IDOC"), David Gomez, Sherwin Miles, Randy Pfister, Lieutenant Krewer (collectively, the "IDOC Defendants") and Stateville Correctional Center Nurse Leslie Wilking. (Dkt. 14.) Fair alleges that the IDOC Defendants and Wilking violated 42 U.S.C. § 1983 and the Eighth Amendment by exhibiting deliberate indifference to his medical needs, the inhumane conditions of his cell, and the inhumane conditions of the Stateville Correctional Center ("Stateville") kitchen, cafeteria, and eating area. (*Id.* ¶¶ 48–52, 67–74.)[1] Fair further alleges that the IDOC Defendants and Wilking violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by denying him reasonable accommodations for his hearing loss. (*Id.* ¶¶ 53–66.) The IDOC Defendants have moved to dismiss Fair's § 1983, ADA, and RA claims against them. (Dkt. 95.) Wilking has separately moved to dismiss Fair's § 1983, ADA, and RA claims against her. (Dkt. 105.)

  The IDOC Defendants' motion to dismiss is granted in part and denied in part. The Court dismisses Fair's § 1983 claims (Counts I, IV, and V) against IDOC and his ADA and RA claims (Counts II and III) against Gomez, Pfister, and Miles with prejudice. The Court dismisses Fair's § 1983 claims against Gomez, Pfister, and Miles for failure to provide Fair with adequate medical care (Count I) and his § 1983 claims against Miles and Pfister for deliberate indifference to inhumane cell conditions (Count IV) without prejudice. Fair's § 1983 claims against Gomez and Krewer for deliberate indifference to the inhumane conditions of his cell may proceed.[2]

  Wilking's motion to dismiss is granted in part and denied in part. Fair's ADA and RA claims against Wilking are dismissed with prejudice. His § 1983 claim against Wilking may proceed. By July 12, 2024, Fair may amend his Complaint for a third time, in accordance with this Memorandum Opinion and Order.

---

[1] Page numbers are taken from CM/ECF headers.
[2] The IDOC Defendants have not moved to dismiss Fair's ADA and RA claims (Counts II and III) against it or Fair's § 1983 claims (Count V) for deliberate indifference to inhumane cafeteria, eating area, and kitchen against the individual IDOC Defendants. These claims can therefore also proceed. (*See* Dkt. 117 at 6, 12.)

## Background

At the time of the relevant events, Fair was incarcerated at Stateville. (Dkt. 14 ¶ 3.)[3] David Gomez is the current warden of Stateville. (*Id.* ¶ 4.) Randy Pfister and Sherwin Miles were wardens of Stateville at all times relevant to the matters underlying Fair's Second Amended Complaint ("SAC"). (*Id.* ¶ 5–6.) Fair alleges that Gomez, Pfister, and Miles are and were all responsible for establishing and implementing IDOC policies, procedures, and practices. (*Id.* ¶¶ 4–6.) Krewer is a correctional officer at Stateville, and Wilking is a nurse at Stateville who Fair alleges, on information and belief, is an employee of Wexford Heath Sources, Inc. ("Wexford"). (*Id.* ¶ 8, 10.) Fair sues each of the individual defendants in their individual capacity. (*Id.* ¶¶ 4–6, 8, 10.) The SAC alleges several incidents where Stateville staff failed to address his medical needs, dangerous conditions in his cell, and dangerous conditions in the cafeteria, kitchen, and eating area of the facility. The Court will describe the only two incidents pertinent to this Opinion.

First, on October 17, 2019, Fair awoke to find a cockroach crawling in his left ear. (*Id.* ¶ 19.)[4] The next day, Fair signed up for sick call for treatment, and was visited by Wilking the following day. (*Id.* ¶¶ 20–21.) Wilking treated Fair by flushing his ear with water, but she did not provide him with any antibiotics. (*Id.* ¶ 21.) The following week, Fair notified another nurse that he was experiencing ringing in the ear that had the cockroach. (*Id.* ¶ 22.)[5] This nurse did not take any action to treat him, but instead told him to let her know if the ringing worsened. (*Id.*) Fair continued to experience sharp pain in his left ear and hearing loss. (*Id.* ¶ 23.) In November of 2019, Fair underwent a hearing screening, which confirmed that he lost all hearing in his left ear. (*Id.* ¶ 24.)

Second, on July 12, 2021, Fair was transferred from Cell 737 to Cell 735, which contained black mold, lead paint fumes, and a cockroach infestation. (*Id.* ¶ 33.) Fair immediately informed Stateville staff of these problems, and then again in or around July or August of 2021, he notified Krewer about his living conditions. (*Id.* ¶ 34.) Krewer told Fair that he had called an exterminator, but the exterminator told Krewer that they would not come to spray Fair's cell unit. (*Id.*) In or around July of 2021, Fair also asked that he be transferred to a new cell; he made this request to Krewer and others. (*Id.* ¶ 36.) Throughout the following months, Fair submitted a grievance and continued to notify various Stateville staff about his living conditions. (*Id.* ¶¶ 35–36.) On August 10, 2021, Counselor Miggins, who oversees cell assignment at Stateville, informed Fair that she had attempted to address his cell conditions but had been unable to resolve the problem. (*Id.* ¶ 38.) On or about August 22, 2021, Fair wrote a letter to Gomez, describing his cell conditions and the failure to exterminate the cockroaches, despite his requests. (*Id.* ¶ 39.) Afterwards, Fair was again told by Counselor Miggins that although she would continue to voice Fair's concerns about his cell, she was unable to resolve his problem. (*Id.* ¶ 40.) Fair spoke to Krewer on August 19, 2021 about his cell conditions, request for extermination, and request for a cell transfer, but no action was taken by IDOC. (*Id.* ¶ 41.)

---

[3] The operative SAC, (Dkt. 14) alleges the following facts, which the Court accepts as true for the purpose of considering the instant motions to dismiss. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016).

[4] In Fair's SAC, he alleges that this event occurred on October 17, 2021, but his response to the IDOC Defendants' motion to dismiss clarifies that the event occurred on October 17, 2019 and that his SAC contains a scrivener's error. (Dkt. 117 at 2, n. 1–3.)

[5] The nurse in question is Wendy Dybas who has since been dismissed from the case without prejudice. (*See* Dkt. 107.)

Fair initiated this action *pro se* on January 20, 2021, by filing a complaint in this District. (Dkt. 1.) After filing his complaint, Fair filed a motion for attorney representation, which Judge Feinerman granted. (Dkt. 8.) Fair, through his recruited counsel, amended his complaint and filed the operative SAC, naming the IDOC Defendants, Wilking, Wendy Dybas, Nurse Jane Doe, and Wexford as defendants. (Dkt. 14.) Wexford and Dybas subsequently filed motions to dismiss, which were denied without prejudice by Judge Feinerman pending settlement discussions. (Dkts. 32, 34, 41) Fair's recruited counsel was then granted leave to withdraw after a failed attempt at settlement, and Fair filed another motion for attorney representation. (Dkt. 48, 53, 55.) After Wexford and Dybas refiled their motions to dismiss, the Court granted their motions, dismissing Fair's claims against them without prejudice, and granted Fair's second motion for attorney representation. (Dkts. 61, 63, 107.) Fair's second and third recruited counsel were unable to represent him, and so Fair's fourth recruited counsel is the current counsel of record. (Dkts. 109, 110, 112–13.)

Around the time the Court issued its Order on Wexford and Dybas's motion to dismiss and Fair's motion for attorney representation, the IDOC Defendants filed a 12(b)(6) motion to dismiss Fair's § 1983, ADA, and RA claims against the individual IDOC Defendants and his § 1983 claims against IDOC. (Dkt. 95.) Wilking also filed her own separate 12(b)(6) motion to dismiss Fair's ADA, RA, and § 1983 claims against her. (Dkt. 105.)

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pled facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### I. IDOC Defendants' Motion to Dismiss

The Court will address the IDOC Defendants' and Wilking's motions to dismiss in turn, beginning with the IDOC Defendants' motion. As Fair has conceded several of the IDOC Defendants' arguments, the Court can dispense with much of the motion summarily. Fair admits that the following claims were inadequately pled: (1) Count I—Fair's § 1983 claims for denial of medical care—as to Gomez, Pfister, Miles, and IDOC; (2) Counts II and III—his ADA and RA claims—as to Gomez, Pfister and Miles; and (3) Count IV—his § 1983 claims for failure to address inhumane cell conditions—as to Pfister and Miles. (Dkt. 117 at 5–7.)

Fair further stipulates that his ADA and RA claims (Counts II and III) against Gomez, Pfister and Miles should be dismissed with prejudice. (*Id.* at 6.) He asks, however, that his § 1983

claims against Gomez, Pfister, Miles for deliberate indifference to his medical needs (Count I) be dismissed without prejudice, with leave to replead. (*Id.* at 5.) He also asks that his § 1983 claims against Pfister and Miles for deliberate indifference to inhumane cell conditions (Count IV) be dismissed without prejudice, with leave to replead. (*Id.* at 6–7.) As Fair's current recruited counsel did not prepare his SAC and the IDOC Defendants make no arguments in opposition to Fair's request that he be permitted to replead his § 1983 claims against Gomez, Pfister, and Miles, the Court grants Fair's request. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend pleadings] when justice so requires.").

Finally, Fair asks that the Court grant him leave to amend Counts I, IV, and V of the SAC (his various § 1983 claims) to add claims against IDOC pursuant to *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978). (Dkt. 117 at 5, 12–13.) The IDOC Defendants oppose this request on the grounds that Fair's *Monell* claim is barred by the Eleventh Amendment. (Dkt. 124 at 5–6.)

The Court agrees that the Eleventh Amendment bars Fair's § 1983 claims against IDOC. The Eleventh Amendment to the United States Constitution states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State…." U.S. Const. amend. XI. "The Supreme Court has interpreted the Eleventh Amendment to also bar federal jurisdiction over suits brought against a state by one of its own citizens." *Vernon v. Illinois Dep't of Corr.*, No. 21-CV-06463, 2023 WL 5980009, at *1 (N.D. Ill. Sept. 14, 2023). Immunity pursuant to the Eleventh Amendment extends to a state's agencies, including IDOC. *Id.* at 2; *Simmons v. Godinez*, No. 16 C 4501, 2018 WL 2391116, at *2 (N.D. Ill. May 25, 2018) ("State agencies like the IDOC are treated the same as states for Eleventh Amendment purposes."). Moreover, neither of the exceptions to Eleventh Amendment sovereign immunity applies here: the Supreme Court has stated that Congress did not abrogate sovereign immunity through § 1983, and "Illinois did not consent to suit in federal court in the statute establishing the IDOC." *Vernon*, 2023 WL 5980009, at *2; *Poole v. Saddler*, No. 13-CV-4984, 2014 WL 585306, at *4 (N.D. Ill. Feb. 14, 2014).[6] Fair's § 1983 claims against IDOC are therefore dismissed with prejudice.

### A. Allegations against Gomez

The Court will next address the IDOC Defendants' arguments in support of dismissal of Fair's remaining § 1983 claims against Gomez and Krewer for deliberate indifference towards his allegedly inhumane cell conditions. The Court will begin with Fair's allegations against Gomez. Fair alleges that Gomez was deliberately indifferent to Fair's cell conditions after Fair sent Gomez a letter notifying him of the black mold, lead paint fumes, and cockroach infestation in his cell and his multiple grievances to Statesville staff.

Pursuant to the Eighth Amendment's prohibition of cruel and unusual punishment, the Constitution "imposes duties on prison officials to 'provide humane conditions of confinement.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825,

---

[6] Under the *Ex Parte Young* doctrine, plaintiffs may also sue a state official, in his or her official capacity, for prospective injunctive relief. *Ames v. Randle*, 933 F. Supp. 2d 1028, 1039 (N.D. Ill. 2013). Fair, however, does not state any request for injunctive relief, nor does he sue any state officials in their official capacity.

832 (1994)). An official violates the Eighth Amendment when he fails to uphold this duty and exhibits "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* (quoting *Farmer*, 511 U.S. at 828). The deliberate indifference standard has both an objective and subjective prong. *Id.* Under the objective prong, "[a] prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter" in that "they den[ied] the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety.'" *Id.* (quoting *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)). Under the subjective prong, "the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate." *Id.*

Astutely, the IDOC Defendants do not assert that Fair's alleged cell conditions are not objectively serious. Instead, the IDOC Defendants focus on the subjective prong, contending that Fair has not shown that Gomez had actual knowledge of Fair's cell conditions. (Dkt. 124 at 2–3.) The IDOC Defendants assert that Fair has not adequately shown that Gomez received the letter or was otherwise notified of Fair's cell conditions. (*Id.* at 3.) The IDOC Defendants further argue that Fair failed to allege that Gomez was directly or personally involved in the deprivation of Fair's constitutional rights, as required for a § 1983 claim. (*Id.* at 4.) Instead, they argue that Fair's allegations demonstrate that the dangerous conditions were localized to his specific cell, as opposed to being widespread or systemic throughout the facility, and that Fair did not allege that Gomez was personally involved in either inspecting or maintaining Fair's individual cell. (*Id.*)

The Court concludes that Fair has sufficiently stated a deliberate indifference claim against Gomez. First, the Court rejects the IDOC Defendants' argument that Fair has not alleged that Gomez had knowledge of Fair's cell conditions. The IDOC Defendants argue that "there are no facts" establishing Gomez's actual knowledge, but such facts are not needed at the motion to dismiss stage. (Dkt. 124 at 2–3.) Fair alleges that he sent Gomez a letter on or about August 21, 2021, and it is reasonable to infer Gomez received the letter and was thus on notice of Fair's cell conditions. *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018) ("Placing the note in the prison mail system supports an inference of receipt.") (citation omitted). Moreover, "actual knowledge" is a question of fact. *Farmer*, 511 U.S. at 842.

Second, the Court finds that Fair has adequately alleged that Gomez was personally involved in the violation of his constitutional rights. Section 1983 does not recognize a cause of action for *respondeat superior* and therefore, a § 1983 plaintiff must demonstrate a supervisor's personal involvement to hold him or her liable under § 1983. *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021). "Personal involvement in a subordinate's constitutional violation requires supervisors to 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Id.* at 493–94; *Wilkins v. Merkle*, No. 13 C 375, 2015 WL 554431, at *5 (N.D. Ill. Sept. 18, 2015) ("Under some circumstances, knowledge of an inmate's unconstitutional conditions may 'require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.'") (quoting *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)); *see also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

As stated above, Fair has adequately alleged that Gomez had actual knowledge of his cell's conditions and Gomez "is responsible for establishing and implementing IDOC policies,

procedures, and practices." (Dkt. 14 ¶ 4.) Fair further alleges that his letter notified Gomez of the black mold, lead paint fumes, and cockroach infestation in his cells, which should have provided Gomez with sufficient knowledge that Fair's constitutional rights were being deprived. *See Perez v. Fenoglio*, 792 F.3d 768, 781–782 (7th Cir. 2015) ("An inmate's correspondence to a prison administrator may... establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation."). The Court thus finds that Fair has sufficiently alleged that Gomez was personally involved in his constitutional violation by turning a blind eye to the dangerous conditions of Fair's particular cell. *See id.* at 782 (finding that plaintiff sufficiently alleged grievance officials were personally liable for the deliberate indifference to his medical needs as they "failed to exercise [their] authority to intervene on [plaintiff's] behalf to rectify the situation, suggesting they either approved or turned a blind eye to his allegedly unconstitutional treatment"); *see also Johnson v. Obaisi*, No. 17-CV-04675, 2019 WL 4749993, at *4 (N.D. Ill. Sept. 30, 2019) (finding "a single letter to an administrator of a prison hospital, even if it is ignored, can be enough at the pleading stage" to plead personal involvement).

Finally, given that it is reasonable to infer that Gomez had personal knowledge of the unconstitutional conditions of Fair's cell, the IDOC Defendants' argument that Fair did not allege the cell conditions were systemic or widespread is immaterial. Nevertheless, the Court notes that it is difficult to believe that the alleged conditions like black mold, lead paint fumes, or a cockroach infestation would be neatly confined to one individual's cell.

As Fair alleges that Gomez had actual knowledge of his cell's conditions and that he failed to resolve these conditions, the Court therefore finds that Fair has sufficiently alleged that Gomez violated the Eighth Amendment.

### B. Allegations against Krewer

The Court will now assess whether Fair's SAC adequately alleges a § 1983 claim for deliberate indifference claim against Krewer. Fair alleges that Krewer was deliberately indifferent to his inhumane cell conditions as Fair notified Krewer of the dangerous conditions, and Krewer failed to take any action. In response, the IDOC Defendants argue that Fair has failed to allege that Krewer was directly involved in Fair's constitutional deprivations. Specifically, the IDOC Defendants assert that Fair has failed to allege that Krewer was personally involved with pest control or cell transfers, especially as Fair alleges that another individual, Counselor Miggins, was in charge of cell assignments. (Dkt. 96 at 7; Dkt. 124 at 5; *see* Dkt. 14 ¶ 38.) The IDOC Defendants further argue that Fair has pled himself out of a claim because he alleges that Krewer called an extermination service for Fair, which precludes an inference that Krewer acted deliberately indifferently to Fair. (Dkt. 96 at 8; *see* Dkt. 14 ¶ 34.)

The Court concludes that Fair has stated a claim for deliberate indifference against Krewer. As stated above, a plaintiff can hold a prison official liable under § 1983 for deliberate indifference to inhumane cell conditions "where an official knows about the unconstitutional conduct and…turn[s] a blind eye to it." *Wilkins*, 2015 WL 5544312, at *5 (quoting *Vance*, 97 F.3d at 992–92) (internal quotations and citation omitted). Fair alleges that he told Krewer directly, on multiple occasions, about the conditions in his cell, and he alleges that aside from contacting exterminators, Krewer failed to address the dangerous conditions of his cell. The Court gives some credence to

6

Krewer's point that Fair's allegation that Krewer called the exterminators somewhat undermines Fair's deliberate indifference claim. Nevertheless, as Fair's cell also allegedly contained black mold and lead paint fumes, which Krewer allegedly did not address, the Court finds, on balance, that Fair's claim against Krewer for deliberate indifference to inhumane cell conditions is still adequately pled. Whether or not Fair can actually meet the deliberate indifference standard is a question for summary judgment.

The Court also concludes that the mere fact that Krewer was not directly in charge of cell assignments or extermination is not dispositive on Fair's claim as Fair could still provide evidence that Krewer, having actual knowledge of Fair's unlawful cell conditions, could have done more for Fair but refused to do so. *See, e.g.*, *Rogers v. Ashworth*, No. 15-CV-765-SLC, 2017 WL 5312199, at *6 (W.D. Wis. Nov. 13, 2017) (denying summary judgment on plaintiff's claims against correctional officer for deliberate indifference towards inhuman cell conditions as a "reasonable jury could conclude that [the correctional officer's] failure to move plaintiff to a different cell, failure to order swampers to clean the cell, failure to provide plaintiff with cleaning supplies, or at the very least, notify a supervisor of the situation, constitutes deliberate indifference").

Relatedly, the Court finds that *Burks v. Raemisch*, which was cited by the IDOC Defendants, is factually distinguishable. In *Burks*, the Seventh Circuit affirmed the district court's dismissal of the plaintiff's complaint, which alleged that the official in charge of initial decisions on prison grievances exhibited deliberate indifference towards the plaintiff's medical needs after she dismissed his grievance as untimely. 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). The Seventh Circuit emphasized the "division of labor" in a prison and recognized that holding a complaint examiner liable for merely complying with a procedural rule could lead to a slippery slope, exposing any public official who receives a complaint from an incarcerated individual to liability, no matter their particular duties. *Id.*

The Court, however, finds that there is a meaningful difference in the role occupied by the grievance official in *Burks* and Krewer's role as a correctional officer. In *Burks* the grievance official was far removed from the decision-making process of the prison medical professionals and denied the plaintiff's complaint pursuant to the time-limits imposed on prison complaints. Even so, the Seventh Circuit acknowledged situations where a grievance official may still be held liable. *Id.* Here, in contrast, the Court finds that § 1983 liability is a much closer call for a correctional officer who has personal knowledge of allegedly unconstitutional cell conditions. It is much more reasonable to infer that Krewer would possess the authority to address Fair's cell conditions, especially considering the fact that he said he had been in contact with exterminators. As other courts have recognized, *Burks* does not preclude § 1983 claims against prison officials who have personal knowledge of a constitutional deprivation and repeatedly do not act to address it. *See Riley El v. Gomez*, No. 19 C 2002, 2023 WL 3169512, at *3 (N.D. Ill. Apr. 28, 2023) ("[A] non-medical prison official 'cannot simply ignore an inmate's plight.'") (internal citation omitted). The Court thus finds that the question of whether Krewer had the authority or ability to resolve Fair's cell conditions but chose not to exercise it is ill-suited for disposition at the motion to dismiss

stage. Should Fair later fail to provide evidence that Krewer had the means to remedy his conditions, summary judgment may be appropriate.

## II.    Wilking's Motion to Dismiss

The Court will now address Wilking's motion to dismiss Fair's claims against her. As was the case with the IDOC Defendants, Fair concedes several of Wilking's arguments in support of dismissal. Namely, Fair agrees that Counts II and III—ADA and RA claims—as to Wilking should be dismissed with prejudice. (Dkt. 118 at 6–7.) The Court will therefore discuss Fair's sole remaining claim against Wilking: his § 1983 claim against her in Count I for deliberate indifference to his medical needs. Fair alleges that Wilking violated the Eighth Amendment when she treated his medical problem by flushing his ear with water, as opposed to giving him an antibiotic.

As stated above, a plaintiff must prove both the objective and subjective prong of the deliberate indifference standard. *Thomas*, 2 F.4th at 719. Wilking does not dispute that Fair has alleged an objectively serious medical condition. Instead, Wilking argues that Fair's allegations fail to show that she was deliberately indifferent to his medical needs, and instead, merely demonstrate that Fair disagreed with Wilking's course of treatment. (Dkt. 106 at 4.) Wilking also points out that Fair only visited her the single time. (*Id*.) In response, Fair claims that Wilking's response to his medical problem constituted an unreasonable departure from standard medical judgment. (Dkt. 118 at 4.)

"[A] medical professional's actions may reflect deliberate indifference if he 'chooses an easier and less efficacious treatment without exercising professional judgment.'" *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (holding medical professionals must "provide medical treatment that reflects 'professional judgment, practice, or standards'") (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). If a plaintiff has received some treatment for his medical condition, a plaintiff may still state a deliberate indifference claim where the treatment received "was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" the plaintiff's condition. *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). But "[d]eliberate indifference is not merely a difference of opinion on how to treat a medical condition" or "a prisoner's dissatisfaction with a physician's course of treatment." *Williams v. Luking*, No. 3:21-CV-00448-GCS, 2022 WL 1692430, at *5 (S.D. Ill. May 26, 2022).

The Court concludes that Fair has adequately alleged that Wilking was deliberately indifferent to his medical needs. The Court construes Fair's allegations in his response brief as additional allegations. *Help At Home Inc. v. Med. Cap., L.L.C*., 260 F.3d 748, 752–52 (7th Cir. 2001) ("'A plaintiff need not put all of the essential facts in the complaint;' he may add them by…brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint.") (citation omitted). Fair alleges that "[i]t is commonly known, even among non-medical professionals, that cockroaches are vectors for communicable disease," that "one does not need an advanced medical degree to realize that the risk of an infection substantially outweighed the risks involved in administering an antibiotic," and that "[m]ost adults understand that if they go to a doctor complaining of a cockroach crawling in their ear, they are going to leave with a prescription for an antibiotic." (Dkt. 118 at 4.) The Court thus finds that Fair adequately alleges

that Wilking did not exercise professional judgment in treating him. In support of dismissal, Wilking acknowledges that the parties' arguments "all require expert testimony as they concern specialized knowledge." (Dkt. 122 at 4.) The Court agrees with that statement but disagrees with Wilking's conclusion. Expert testimony is required to determine whether Wilking's decision was a departure from sound medical judgment and, therefore, further factual development—not dismissal—is warranted here.

The Court further concludes that the case Wilking cites, *Hibbard v. Reitz,* is not dispositive here. First, *Hibbard* was not reported in the Federal Reporter and is thus a non-precedential order that is not binding on this Court. 33 F. App'x 820 (7th Cir. 2006); *see* 7th Cir. R. 32.1(b), (d). In any event, in *Hibbard*, the Seventh Circuit affirmed dismissal of the plaintiff's complaint, which alleged deliberate indifference to a medical need by a prison nurse, because the plaintiff had pled himself out of court by alleging that the nurse believed the administered treatment was medically appropriate. 33 F. App'x at 822. Fair, however, makes no such allegation and further alleges, in his response brief, that Wilking's decision did not evidence professional medical judgment.

Although Wilking emphasizes that the Seventh Circuit also relied on the fact that the plaintiff only visited the defendant nurse once as support for dismissal, the Court does not interpret *Hibbard* to stand for the blanket proposition that dismissal of deliberate indifference claims is warranted where a plaintiff has only seen a medical provider once. Rather, the Seventh Circuit seems to have relied on that fact to demonstrate that, aside from his unavailing argument that the nurse made an inappropriate medical decision, the plaintiff failed to allege that the nurse had otherwise deliberately disregarded the plaintiff's symptoms. *Id.* The Court thus finds that the limited interaction between Fair and Wilking, at most, suggests only that Fair has a more difficult case to prove; not that his deliberate indifference claim against her should fail as a matter of law. The Court will properly address the question of whether or not Fair has adequately proved his case at summary judgment.

## Conclusion

For the foregoing reasons, the IDOC Defendants' motion to dismiss is granted in part and denied in part. The Court dismisses Fair's ADA and RA claims (Counts II and III) against Gomez, Pfister, and Miles with prejudice. The Court also dismisses all of Fair's § 1983 claims (Counts I, IV, and V) against IDOC with prejudice. The Court dismisses Fair's § 1983 claims against Gomez, Pfister, and Miles for failure to provide Fair with adequate medical care (Count I) without prejudice. Fair's § 1983 claims against Miles and Pfister for deliberate indifference to inhumane cell conditions (Count IV) are also dismissed without prejudice. Fair's § 1983 claims against Gomez and Krewer for deliberate indifference to inhumane cell conditions may proceed. Wilking's motion to dismiss is also granted in part and denied in part. Fair's ADA and RA claims against Wilking are dismissed with prejudice. His § 1983 claim against her may proceed. By July 12, 2024, Fair may amend his Complaint for a third time, in accordance with this Order.

9

ENTERED: 6/12/24

_____
Nancy L. Maldonado
United States District Court Judge

10